IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

Edward Leon Muldrow, #226710,              )
                                           )     Civil Action No. 3:05-388-RBH-JRM
                    Petitioner,            )
                                           )
        vs.                                )
                                           )
                                           )
State of South Carolina; and              )     **REPORT AND RECOMMENDATION**
Henry McMaster, Attorney                  )
General of the State of South Carolina,   )
                                           )
                    Respondents.           )
———————————————————————                    )

        Petitioner, Edward Leon Muldrow ("Muldrow"), is an inmate at the South Carolina

Department of Corrections serving a sentence of twelve years for distribution of crack cocaine.

He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 28,

2005.[1]  The case was automatically referred to the undersigned pursuant to the provisions of 28

U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC.  Respondents filed a motion for

summary judgment, supported by copies of portions of the state court record, on June 8, 2005.

Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309

(4th Cir. 1975), was issued on June 9, 2005, advising petitioner of his responsibility to properly

respond to the motion for summary judgment.  Petitioner filed his response on October 11, 2005.

Muldrow's response contains a lengthy motion for judgment as a matter of law ("Response___").

---

[1] This is the Houston v. Lack, 487 U.S. 266 (1988) "delivery" date.  See order filed
March 1, 2005.

**Procedural History**

Muldrow was indicted in Florence County in March of 2002 for a distribution of crack cocaine which was alleged to have occurred in November of 1999 (App. 99). He was represented by Michael S. Bell. Muldrow struck a plea bargain[2] and pled guilty on March 27, 2000. He received a sentence of twelve years. (App. 18-19). No direct appeal was filed.

On August 15, 2000, Muldrow filed an application for post-conviction relief ("PCR") asserting the following claims:

<div style="margin-left:2em">

1. The Court did not have subject matter jurisdiction; faulty amendment of the date of the offense;
2. Denial of due process; not informed of the allegations of the charge;
3. Ineffective assistance of counsel;
   a. counsel failed to inform Applicant that his offense was no-parole;
   b. counsel intimidated Applicant with the habitual offenders act to coerce Applicant to plea;
   c. counsel withheld key information;
   d. counsel failed to move to quash the indictment;
   e. Counsel failed to inform Applicant of his trial rights
4. Involuntary Plea, due to ineffective assistance of counsel;
5. Excessive Sentence; contrary to statute;
6. Illegal Sentence; contrary to statute;
7. Vindictive Prosecution; prosecution deliberately took an upward departure from sentencing guidelines.

</div>

An evidentiary hearing was held on October 8, 2002. Muldrow was represented by Elbert K. Turbeville. The PCR court issued an order of dismissal on November 4, 2002 (App. 85). Muldrow filed a pro se motion to alter or amend the judgment on November 21, 2002 (App. 91). The PCR court did not rule on the motion. PCR counsel filed a notice of intent to appeal and the

---

[2]Under the terms of the plea agreement, the distribution was reduced from a third to a second offense with a cap of 15 years, the sentence to run concurrently with sentences he was serving at the time.

case was forwarded to the South Carolina Office of Appellate Defense.  That office filed a motion

to remand the case to the circuit court to resolve Muldrow's pro se motion to alter or amend the

order of the PCR court.  By order dated May 15, 2003, the South Carolina Supreme Court denied

the motion to remand and stated "petitioner is reminded that subject matter jurisdiction issues can

be raised at any time."

Counsel then filed a Johnson[3] petition for writ of certiorari raising the following issue:

> Did the solicitor's amendment to petitioner's indictment, and the material
> variance between the facts alleged in the indictment and the arrest warrant,
> deprive the court of lack (sic) of subject matter jurisdiction?[4]

Under South Carolina law, Muldrow properly filed a pro se petition for writ of certiorari

presenting the following issue:

> Did the Circuit Court lack subject matter jurisdiction to accept the
> petitioner's guilty plea to the indictment charge?

The petitions were denied by order of the South Carolina Supreme Court dated January 28, 2004.

The Remittur was returned February 13, 2004.

### Grounds for Relief

GROUND ONE:    Court lacked subject matter jurisdiction to accept
defendants guilty plea to charge of distributing crack-
coc(sic).

SUPPORTING FACTS:    Petitioner plead (sic) guilty to indicted charge of
"distribution of crack cocaine in an undercover agent on or
about November 11, 1999, but state prosecuted case or

---

[3]Johnson v. State, 294 S.C. 310, 364 S.E2d 201 (1988).

[4]Several pages are missing from the copy of the Johnson petition filed by respondents.
However a complete copy is attached to Muldrow's response at pp. 122-26.

charge of dist. crack-coc. to confidential informant on NOVEMBER 5, 1999.

GROUND TWO:        Indictment founded on complaint which was founded on inadmissible evidence.

SUPPORTING FACTS:    due to lack of personal knowledge of the facts affiant alleged in sworn affidavit in support of, and establishing "probable cause" for warrant's issue, and affiants false and misleading statements of facts fraud and deception of court, circumvention of "RELIABILITY TEST OF CON-FIDENTIAL IN-FORMANTS, perjury.

GROUND THREE:      Court lacked subject matter jurisdiction to hear the plea for lack of a legal indictment.

SUPPORTING FACTS:    wittnesses (sic) perjured testimony before grand jury, circumvention of "RELIABILITY TEST OF CONFIDENTIAL INFORM MANTS (sic), MISJOINDER OF COMPLAINT AND INDICTMENT, MISJOINDER OF CASES, MISJOINDER OF EVIDENCE, FRAUD AND DECEPTION UPON GRAND JURY FOR PURPOSE OF GAINING INDICTMENT: 1. without revealing the true nature of the informant, and the falseness of.

GROUND FOUR:       Court lacked subject matter jurisdiction due to states illegal prosecution of unindicted offense.

SUPPORTING FACTS:    [S]tate prosecuted…defendant for a distribution of crack cocaine to a confidential informant on November 5, 1999 without first obtaining Grand Jury indictment charging that offense.

GROUND FIVE:       COURT LACKED SUBJECT MATTER JURIS-DICTION DUE TO Falsified drug evidence, or inadmissible drug evidence.

SUPPORTING FACTS:    Crack cocaine allegedly distributed to confidential source, by Petitioner, was not recovered from the con. source, nor does the official police report indicate that any crack cocaine was recovered during or connected with defendant at time of arrest. (sic).

4

Drug sample was supposedly or reportedly submitted to the Charleston Police Department instead of S.L.E.D., Nor is that an established chain-of-custody for alleged drug sample, and crack cocaine appears to have origonated with the Florence County Sheriff's Department. (sic).

GROUND SIX:     Court lacked Subject matter Jurisdiction to Hear Plea, enter conviction, and to sentence Petitioner due to False Indictment

SUPPORTING FACTS:     State's evidence established the facts of case to be an alledged (sic) November 5, 1999 distribution of crack cocain to a confidential source prior to Grand Jury proceedings, yet, Grand Jury "true-bills" indictment charging a November 11, 1999 distribution of crack-cocaine to a "under-cover Agent" and that November 11, 1999 was not date alledged (sic) as commission of offense, nor had accused been arrestted, given notice, arraigned, bailed, given opperturnity (sic) for preliminary Haring on charge. (sic). Nor did evidence support indictments charge. Therefore indictment was and is, not only false, but maliciously false.

GROUND SEVEN:     COURT LACKED SUBJECT MATTER JURISDICTION Due to concealed prosecution of offenses.

SUPPORTING FACTS:     STATE PROSECUTED Petitioner (defendant) on charge of distributing crack-coc. to undercover Agent on November 11, 1999 without Notice of complaint, arraignment, bail, Preliminary Hearing Issue of arrest warrant, or opportunity to defend, through multifarriousness (sic), misjoinder or arrest and affidavit from defendants November 5, 1999 arrest on separate and distinct drug distribution charge, and thereby concealed the illegal prosecution of that offense, without Grand Jury indictment.

GROUND EIGHT:     Court LACKED SUBJECT MATTER JURISDICTION OR LEGAL AUTHORITY TO SENTENCE DEFENDANT TO SERVE

5

SENTENCE WITHOUT PAROLE ELLIGIBILITY (sic)

SUPPORTING FACTS:    Defendant was sentenced under S.C. code 44-53-375(b)(2) ans section b of 44-53-375 does not provide for the denial of parole eligibility as a punishment. Defendants offense is a nonviolent offense and S.C. parole laws only deny parol (sic) eligibility to violent offenders

GROUND NINE:    INEFFECTIVE ASSISTANCE OF COUNSEL,

SUPPORTING FACTS:    Failure to investigate, Failure to research Law, Failure to inform, Failure to exercise due diligence, aiding and abetting concealment of duplicity and illegal prosecution.

GROUND TEN:    INVOLUNTARY PLEA

SUPPORTING FACTS:    Guilty Plea was not informed and intelligent decision

GROUND ELEVEN:    COURT LACKED SUBJECT MATTER JURISDICTION TO HEAR PLEA, ENTER CONVICTION, and TO IMPOSE SENTENCE DUE TO DUPLICITY.

SUPPORTING FACTS:    STATE PROSECUTED TWO DRUG OFFENSES UNDER SINGLE CHARGE INDICTMENT.

## Discussion

A.    Statute of Limitations

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the Antiterrorism and Effective Death Penalty Act of 1966 ("AEDPA"). The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to

establish a one-year statute of limitations for filing habeas petitions.[5]  Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations in § 2254 is not jurisdictional, but is subject to the doctrine of equitable tolling.  This doctrine allows courts to forgive untimely petitions based on "extraordinary circumstances" beyond the inmate's control which cause the delay.  Bilodeau v. Angelone, 39 F.Supp.2d 652, 659 n.1 (E.D.Va. 1999).  Under § 2244(d), the State bears the burden of asserting the statute of limitations.  Petitioner then bears the burden of establishing the applicability of the doctrine.  Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002).

Muldrow pled guilty on March 27, 2000.  He did not file a direct appeal so the statute of limitations started to run on April 6, 2000.  Crawley v. Catoe, 257 F.3d 395, 398 (4th Cir. 2001),

---

[5]Prior to this amendment there was no statute of limitations.  Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing.  Duarte v. Hershberger, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

cert. denied, 534 U.S. 1080 (2002).  See also SCACR 203(b)(2) (defendant has 10 days after imposition of sentence to file notice of appeal).  Under South Carolina law, a defendant has one year to file a PCR after the judgment or appeal become final.  S.C. Code Ann. § 17-27-45. Muldrow filed a timely PCR on August 15, 2000.  Giving Muldrow credit for all time his PCR was pending, including resolution of his pro se petition to remand, the tolling period ended on February 13, 2004 when the Remittur was returned.  At that point, the statute of limitations began to run again and ceased on January 28, 2005, when his present petition was filed.  A defendant does not have one year from the conclusion of collateral review to file his habeas petition, but one year from the date his conviction becomes final tolled by any time his PCR is pending.  Harris v. Hutchison, 209 F.3d 325 (4th Cir. 2000).  Following denial in state court of the PCR, the statute is not tolled by the time for filing a petition of writ of certiorari to the United States Supreme Court, or by the Supreme Court's consideration thereof.  Crawley, 257 F.3d at 399-400.

Using these concepts, one hundred thirty (130) days of untolled time lapsed between the date Muldrow's conviction became final and the date he filed his PCR.  After the conclusion of collateral review, three hundred forty eight (348) days of untolled time lapsed before he filed his petition in this court.  Thus, a total of four hundred seventy-eight (478) days of untolled time lapsed before Muldrow filed his habeas petition.  It is clearly untimely.

Muldrow does not dispute these dates or attempt to establish equitable tolling.  Instead, he argues that respondents misrepresented the facts by arguing that his PCR was not timely filed in state court.  Muldrow is mistaken.  On page 8 of their memorandum, respondents cite Pace v. DiGuglielmo, ___ U.S. ___, 125 S.Ct. 1807 (2005) in a general discussion of the AEDPA statute of limitations.  They state that the holding of the case is that an untimely filed PCR is not

"properly filed" within the meaning of the AEDPA. Respondents do not argue that Muldrow's

PCR was not timely filed. In any event, the present petition is clearly time barred.

B.    Standard of Reveiw

Since Muldrow filed his petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C.

§ 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615

(4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998),

*cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim--(1) resulted in a decision that was
> contrary to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams

v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this

court must separately analyze the "contrary to" and "unreasonable application" phrases of §

2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that contradicts
> the governing law set forth in [Supreme Court] cases .... A state-court
> decision will also be contrary to this Court's clearly established precedent
> if the state court confronts a set of facts that are materially indistinguishable
> from a decision of [the Supreme] Court and nevertheless arrives at a result
> different from [the Court's] precedent.

* * *

> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

C.      Subject Matter Jurisdiction

In grounds 1, 3, 4, 5, 6, 7, 8, and 11 of the present petition, Muldrow asserts that he is entitled to a writ of habeas corpus because the trial court lacked subject matter jurisdiction on various accounts.  The PCR court ruled on one of these grounds, i.e., that the trial court lacked subject matter jurisdiction because the State improperly amended the indictment to allege the date of offense as November 11 instead of November 5.  The PCR court found that the record showed that no objection was made to the amendment, and there was no surprise because the discovery material reflected the November 5th date.  The PCR court analyzed the issue under state law. (App. 87-88).

Muldrow reiterated this issue in his pro se motion to alter or amend the judgment of the PCR court (App. 91).  In that motion, Muldrow appears to expand his claim to include an allegation that the indictment also deprived the trial court of subject matter jurisdiction because it alleged that the distribution was to an undercover agent while the facts showed that the distribution was to a confidential informant.  The South Carolina Supreme Court denied Muldrow's motion to remand the motion to alter or amend and invited him to raise any issues

10

relating to subject matter jurisdiction in his petition for writ of certiorari.  See Order of the South

Carolina Supreme Court dated May 15, 2003 ("petitioner is reminded that subject matter

jurisdiction issues can be raised at any time.").  The <u>Johnson</u> petition filed by the South Carolina

Office of Appellate Defense alleged that the trial court lacked jurisdiction due to the variance

between the facts alleged in the arrest warrant and those alleged in the indictment.  Muldrow's pro

se petition for writ of certiorari further argues that the trial court lacked jurisdiction based on the

undercover agent/confidential informant difference.  Thus, the issues presented to the South

Carolina Supreme Court with respect to lack of subject matter area: (1) factual variance between

arrest warrant and indictment; (2) difference in date of alleged offense; and (3) factual allegation

as to whom the distribution was made.  The undersigned concludes that any other allegations

concerning subject matter jurisdiction raised by the present petition are procedurally barred.

<u>Smith v. Murray</u>, 477 U.S. 527 (1986).  See discussion below.

The criminal jurisdiction of the Circuit Courts in South Carolina is established by Article

V, § 11 of the South Carolina Constitution ("The Circuit Court shall be a general trial court with

original jurisdiction in ...criminal cases").  Subject matter jurisdiction is the authority of a court

to hear and determine cases of the general class to which the proceedings in question belong.

<u>Dove v. Gold Kist, Inc.</u>, 442 S.E.2d 598 (S.C. 1994) and <u>State v. Gentry</u>, 610 S.E.2d 494, 498

(S.C. 2005).  The Circuit Court gains subject matter jurisdiction in a criminal case in one of three

ways: "(1) the grand jury true bills an indictment which sufficiently states the offense; (2) the

defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime

adequately charged in a true bill of indictment."  <u>State v. Gonzales</u>, 600 S.E.2d 122, 124 (Ct.

App. 2004).

A court's jurisdiction over the subject matter of a proceeding before it is fundamental. A party may raise lack of subject matter jurisdiction at any time, including on appeal for the first time. Further, the court may raise the issue *sua sponte*. Lack of subject matter jurisdiction may not be waived by the parties. Brown v. State, 540 S.E.2d 846 (S.C. 2001). The acts of a court which lacks subject matter jurisdiction are void. State v. Funderburk, 191 S.E.2d 250 (S.C. 1972).

Since a state defines the subject matter jurisdiction of its courts, a challenge on the basis of lack of subject matter jurisdiction is a quintessential question of state law. Thus, the frequently quoted maximum that a criminal defendant can raise the issue of lack of subject matter jurisdiction at any time should actually be phrased "at any time he is in state court." In other words, it is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists. This court does not review determinations of state law made by South Carolina courts. See Pulley v. Harris, 465 U.S. 37 (1984) ("[A] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.").

Here, the PCR court ruled on Muldrow's subject matter jurisdiction claim based on state law. The Johnson petition and Muldrow's pro se petition for writ of certiorari cited only state law. No constitutional basis was alleged. The denial of certiorari by the South Carolina Supreme Court thus rested solely on Muldrow's allegations of violation of state law. Likewise, in the present petition, Muldrow makes no allegation of constitutional violation.

Where, as here, the state's highest court has found no violation of state law, a petitioner must allege and show "a complete miscarriage of justice." Wright v. Angelone, 151 F.3d 151, 158

12

(4th Cir. 1998).  Muldrow has not done so and his claims based on lack of subject matter jurisdiction must fail.

D.     Procedural Bar

In his second ground for relief, Muldrow appears to allege that he is entitled to a writ of habeas corpus because the indictment was based on false and perjured testimony and that the affiant for the arrest warrant did not have personal knowledge of the facts alleged in the affidavit.  This ground for relief was not asserted in the PCR application, no evidence was presented on it at the hearing, it was not addressed by the PCR court, and it was not presented in the Johnson petition or in Muldrow's pro se petition.  Respondents assert this ground is procedurally barred.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.  The two theories rely on the same rationale.  The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

1.     **Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

13

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

14

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCAR 207 and <u>Blakeley v. Rabon</u>, 266 S.C. 68, 221 S.E.2d 767 (1976).   The second avenue of relief is by filing an application for post-conviction relief (PCR).  See S.C. Code Ann. § 17-27-10 <u>et</u> <u>seq.</u>  A PCR applicant is also required to state all of his grounds for relief in his application.  <u>See</u>, S. C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[6]  If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, <u>Patterson v. Leeke</u>, 556 F.2d 1168 (4th Cir. 1977) and <u>Richardson v. Turner</u>, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  <u>See</u> <u>Rose v. Lundy</u>, <u>supra</u>.

---

[6]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances.  <u>See</u> discussion below on procedural bypass.

2.    **Procedural bypass**[7]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

---

[7]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim.  Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice,  the federal courts generally decline to hear the claim.  See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice").  In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply.  Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.     Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice.  Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000).  Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default.  O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151 (1997).  To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocense.  Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999).  A petitioner may establish actual innocense as to his guilt, Id., or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.    Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents.  Gray v. Netherland, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and prejudice or actual innocence.  If not raised by petitioner, the court need not consider the defaulted claim.  Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

After denial of the PCR, appellate counsel filed a Johnson petition for writ of certiorari[8] with the South Carolina Supreme Court.  In Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988), the South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes that the PCR applicant has no meritorious grounds to present.  Counsel is required to

---

[8]All appeals from the denial of a PCR application are made by seeking a writ of certiorari from the South Carolina Supreme Court.  See SCACR 227.

file the <u>Johnson</u> petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney for the petitioner on appeal. A copy of the brief is furnished to the applicant and he is notified that he has a specific period of time to furnish further information to the Supreme Court for consideration in making a determination as to the <u>Johnson</u> petition. The applicant may file a pro se brief raising additional issues. <u>Foster v. State</u>, 298 S.C. 306, 379 S.E.2d 907 (1989). In ruling on a <u>Johnson</u> petition for writ of certiorari, the South Carolina Supreme Court necessarily considers the issue or issues raised in the <u>Johnson</u> petition and any issues raised by the applicant in his pro se brief. Further, the South Carolina Supreme Court conducts a review of the record when a <u>Johnson</u> petition is filed. <u>King v. State</u>, 308 S.C. 348, 417 S.E.2d 868 (1992). In so doing, the South Carolina Supreme Court will only consider those issues raised by the PCR application upon which evidence was presented **and** were ruled on by the PCR court. The South Carolina Supreme Court applies a procedural bar to issues which do not meet this criteria. Under South Carolina law, the PCR court is required to make specific findings of fact and conclusions of law as to each issue raised in the PCR. See S.C. Code Ann. § 17-27-80 and Rule 52(a) SCRCP. <u>Bryson v. State</u>, 328 S.C. 236, 493 S.E.2d 500 (1997). Counsel is required to object to any deficiencies in the order of the PCR court. <u>McCullough v. State</u>, 320 S.C. 270, 464 S.E.2d 340 (1995). This duty falls on the PCR applicant if not raised by counsel in the <u>Johnson</u> petition. See <u>Pruitt v. State</u>, 310 S.C. 254, 423 S.E.2d 127, 128 n.2 (1992) ("the general rule [is] that issues must be raised to, and ruled on by, the post-conviction judge to be preserved for appellate review."). See also, <u>Padgett v. State</u>, 324 S.C. 22, 484 S.E.2d 101 (1997) (issues not ruled on by PCR court are not preserved for appeal). Thus, when considering a <u>Johnson</u> petition, the South Carolina Supreme Court considers only those issues

20

raised by the <u>Johnson</u> petition, raised in any pro se brief or petition filed by the applicant, and those issues specifically ruled on by the PCR court.

The undersigned finds that Ground 2 of the present petition is procedurally barred as it was not raised in the <u>Johnson</u> petition or Muldrow's pro se petition.

E.     Ineffective Assistance of Counsel

In Ground 9 of the present petition, Muldrow cites various claims of ineffective assistance of trial counsel.  Only two of such claims were addressed by the PCR court: (1) failure to move to quash the indictment after amendment; and (2) failure to advise Muldrow that the would be ineligible for parole. (App. 88-89).  Based on the above discussion, the undersigned concludes that all other claims of ineffective assistance of counsel are procedurally barred.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970).  In the case of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Turner v. Bass</u>, 753 F.2d 342, 348 (4th Cir. 1985) quoting <u>Strickland</u>, *reversed on other grounds*,

476 U.S. 28 (1986).  In meeting the second prong of the inquiry, a complaining defendant must

show that he was prejudiced before being entitled to reversal.  <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability
> that, but for counsel's unprofessional  errors, the result of the
> proceeding would have been different.  A reasonable probability is
> a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the
> reasonableness of counsel's challenged conduct on the facts of the
> particular case, viewed as of the time of counsel's conduct. . . the
> court must then determine whether, in light of all the circumstances,
> the identified acts or omissions were outside the <u>wide</u> <u>range</u> of
> professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the AEDPA, a federal habeas court must determine whether the state court's

decision "was contrary to, or involved an unreasonable application of clearly established Federal

law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The

court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test.  See

<u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for

resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the

petitioner has entered a plea of guilty.  A guilty plea generally precludes the petitioner from

challenging defects in the process which occurred prior to the plea.  He "may only attack the

voluntary and intelligent character of the guilty plea by showing that the advice he received from

counsel was not within the standards set forth in <u>McMann</u>."  <u>Tollett v. Henderson</u>, 411 U.S. 258,

267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

A criminal defendant must be informed of the direct consequences of his plea. Misinformation as to the direct consequences of a plea renders the plea involuntary. Manley v. U.S., 588 F.2d 79 (4th Cir. 1978) (erroneous statement of court as to maximum possible punishment). Neither the court nor defense counsel is obligated to advise a defendant as to the collateral consequences of a plea. Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979) (parole eligibility is a collateral consequence of a plea). "The distinction between 'direct' and 'collateral' consequences of a plea...turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir. 1973).

Under these principles, if an attorney substantially misinforms a defendant about the date he will become eligible for parole, and the defendant decides to plead guilty instead of going to trial based on the misinformation, the defendant will be entitled to relief. Strader, supra; O'Tuel

23

v. Osborne, 706 F.2d 498 (4th Cir. 1983); and Ostrander v. Green, 46 F.3d 347 (4th Cir. 1995).[9]

On the other hand, a plea is involuntary if the defendant is not advised that parole ineligibility will

result as a direct consequence of his plea. Cuthrell, 475 F.2d at 1365-66; Bell v. North Carolina,

576 F.2d 564, 565 (4th Cir. 1978); and Chapman v. Angelone, 187 F.3d 628, 1999 WL 511062

(4th Cir. 1999) (unpublished).

The PCR court correctly reasoned that trial counsel committed no error in failing to move

to quash the indictment based on lack of jurisdiction after amendment.  The court had previously

found that the trial court had subject matter jurisdiction under state law, so such a motion would

have been futile.

In his PCR application, Muldrow specifically stated that his trial attorney "failed to inform

Applicant that his offense was no-parole."  This was the basis of the PCR court's ruling.  The

PCR court found that trial counsel "did not misinform Applicant on parole eligibility." (App. 89).

The undersigned finds the PCR court's analysis to be faulty under the above discussion that

requires counsel to inform a defendant that he will be ineligible for parole.  However, the PCR

court further found that the issue of parole eligibility was cured because the trial court informed

Muldrow during the plea hearing that he would be ineligible for parole. (Id.).  This finding is

supported by the record. (App. 6).  The undersigned concludes this finding to be correct.  Ventura

v. Meachum, 957 F.2d 1048, 1058 (2nd Cir. 1992); Barker v. United States, 7 F.3d 629, 633 (7th

Cir. 1993), cert. denied, 510 U.S. 1099 (1994); and Weeks v. Synder, 219 F.3d 245, 260-61 (3rd

Cir. 2000), cert. denied, 531 U.S. 1003 (2000).  Further, at the PCR hearing, Muldrow testified

---

[9]Ostrander concerned misadvice about eligibility for a work release program.

that before he entered his plea he knew that he would not be eligible for parole. (App. 52).[10]

Thus, Muldrow cannot show that he was prejudiced.

F.    Involuntary Guilty Plea

A guilty plea to be valid must be the informed, voluntary decision of a competent defendant who has the opportunity to receive the advice of a reasonably competent attorney.  A defendant must be informed of the charges against him and the protections afforded by the United States Constitution.  Boykin v. Alabama, 395 U.S. 238 (1969) and Henderson v. Morgan, 426 U.S. 637 (1976).  The defendant must be informed of the direct consequences of his plea such as the maximum sentence and any applicable mandatory minimum sentence.  A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970).

As noted above, Muldrow's claim of an involuntary guilty plea is subsumed within his claim of ineffective assistance of counsel.

Muldrow cites numerous issues about which his trial attorney failed to advise him which he asserts rendered his plea involuntary.  These include false statements in the investigative incident report; planted or fabricated drugs; irregularities with the chemical analysis report; unlawful arrest; incident report differs from arrest warrant; false statements in arrest warrant; untimely filing of arrest warrant with Clerk of Court; discrepancies between warrant and indictment; no advice to effect of prior offense; and no advice as to having to serve 85% of his

---

[10]Muldrow appears to make a different argument in his present petition, i.e., his attorney failed to inform him that he would be required to serve 85% of his sentence.  See Muldrow's response at p. 75.  The undersigned finds this claim to be procedurally barred.  See discussion above.

sentence. (Response 73-74). These claims overlap and most were not raised and addressed during the PCR process.

The undersigned concludes that, except as discussed above, these claims of ineffective assistance of counsel are procedurally barred. Having concluded that counsel was not ineffective on the claims which are properly before this court, it follows that Muldrow's plea was not involuntary.

## Conclusion

Having reviewed the record, the undersigned recommends that petitioner's motion for judgment as a matter of law be denied, that respondents' motion for summary judgment be granted, and that the petition be dismissed without an evidentiary hearing.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

February 1, 2006

Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

<div align="center">

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

</div>